IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA
BATON ROUGE

EMILY WAGNER } CIVIL ACTION NO. _____

VERSUS

BELLSOUTH TELECOMMUNICATIONS,
INC.; FRANKLIN COLLECTION SERVICE,
INC.; CBCS, aka CBCS NATIONAL and CREDIT
BUREAU COLLECTION SERVICES, INC.;
EQUIFAX CREDIT INFORMATION SERVICES,
INC.; and TRANS UNION, L.L.C.

*********************************************************************

COMPLAINT

COMES NOW, EMILY WAGNER, PRO SE, hereinafter referred to as Plaintiff, complaining of BELLSOUTH TELECOMMUNICATIONS, INC. now known as AT&T, hereinafter referred to as BELLSOUTH; FRANKLIN COLLECTION SERVICE, INC., hereinafter referred to as FRANKLIN; CBCS, aka CBCS NATIONAL and CREDIT BUREAU COLLECTION SERVICES OF OHIO, INC., hereinafter referred to as CBCS; EQUIFAX CREDIT INFORMATION SERVICES, INC., hereinafter referred to as EQUIFAX; and TRANS UNION, L.L.C. aka TRANSUNION, hereinafter referred to as TRANSUNION and collectively referred to as DEFENDANTS; and would show the following:

*Jurisdiction*

1. This is an action for damages for violation of the Fair Debt Collection Practices Act, 15 U.S.C.A. § 1692 et seq., the Fair Credit Reporting Act, 15 U.S.C.A. § 1681 et seq., and the Louisiana Unfair Trade Practices Act, Louisiana R.S. 51 § 1401 et seq., described more particularly as follows.

2. Jurisdiction of this court is invoked under 15 U.S.C. § 1692k(d), 28 U.S.C.A. § 1337, and 28 U.S.C.A. § 1367(a). Jurisdiction under the Louisiana Unfair Trade Practices Act is proper in this court because these allegations are pendant to the Federal violations.

3. Venue is proper in this Court in that most defendants have agents in Baton Rouge and the legal violations and damages caused by the Defendants' actions all occurred within the Middle District of Louisiana.

4. Prescription as pertains to Louisiana Unfair Trade Practices Act, Louisiana R.S. 51 § 1401 et seq., has not commenced to run because it begins anew each time BELLSOUTH and its agents release the false, fraudulent information that Plaintiff owes BELLSOUTH money.[1] Since it was put on notice, BELLSOUTH has a continuing duty to correct false information submitted to credit bureaus and collection agencies. Since BELLSOUTH was put on notice, it has not corrected the false information.

*Parties*

5. Plaintiff is a natural person and is a resident and citizen of East Baton Rouge Parish of the State of Louisiana and of the United States. She is a "consumer" within the meaning of 15 U.S.C.A. § 1692a (3), U.S.C.A. §1681a(c), and the Louisiana Unfair Trade Practices Act. She files as a pro se litigant.

6. The Defendant BELLSOUTH is a corporation incorporated under the laws of Georgia. Its principal place of business is in Georgia but it regularly does business in Louisiana, is licensed to do business in Louisiana, and has a registered agent in Baton

---

[1] *See Capitol House Preservation Company, L.L.C. v. Perryman Consultants, Inc.,* 725 So.2d 523, 528 (La. App. 1 Cir 1998) in which prescription did not commence as long as defendants did not disclose misrepresentations in their application which they had a continuing duty to correct.

Rouge, Louisiana. BELLSOUTH is a "creditor" within the meaning of 15 U.S.C.A § 1692a(4).

7. FRANKLIN is a corporation incorporated under the laws of Mississippi. It has its principal place of business in Mississippi. It is licensed to do business in Louisiana and has a registered agent in Louisiana. FRANKLIN is a "debt collector" within the meaning of 15 U.S.C.A. § 1692a(6). However, FRANKLIN has not registered as a collection agency as required by Louisiana R.S. 9:3534.1(B).

8. CBCS is not listed in the Louisiana Secretary of States' records. However, CREDIT BUREAU COLLECTION SERVICES OF OHIO, INC. is listed in the Louisiana Secretary of State's records and has the same address as CBCS and CBC NATIONAL. CREDIT BUREAU COLLECTION SERVICES OF OHIO, INC. is incorporated under the laws of Ohio, its principal place of business is in Ohio, it is licensed to do business in Louisiana, and has a registered agent in Baton Rouge. CBCS is a "debt collector" within the meaning of 15 U.S.C.A. § 1692a(6) but is not registered in Louisiana as a debt collector as required under Louisiana R.S. 9:3534.1(B).

9. The Defendant EQUIFAX is a Corporation incorporated in the state of Georgia but regularly does business in Louisiana and has a registered agent in Baton Rouge, Louisiana. EQUIFAX is a "consumer reporting agency" within the meaning of 15 U.S.C.A § 1681a(f).

10. The Defendant TRANSUNION is a limited liability company (LLC) headquartered in Chicago, Illinois and domiciled in Delaware, but regularly does business in Louisiana and has a registered agent in Baton Rouge, Louisiana.

TRANSUNION is a "consumer reporting agency" within the meaning of 15 U.S.C.A § 1681a(f).

*Facts*

11. Plaintiff was a customer of BELLSOUTH from September, 1992 through August of 2003.

12. In 1996 when her daughter was attending college in Missouri, Plaintiff requested an incoming 800 line from BELLSOUTH. After the 800 line was initiated, with no explanation of what it was for, BELLSOUTH began sending a second, "secondary" bill each month charging her approximately $3. Plaintiff paid the separate bill to avoid having her phone disconnected.

13. While Plaintiff was a customer of BELLSOUTH, on her primary bill, BELLSOUTH billed her for services by MCI beginning in March of 2001 even though she was not a customer of MCI nor had she authorized any services from MCI, and never received any services from MCI.

14. Plaintiff made numerous complaints to BELLSOUTH about the unauthorized MCI billing on her primary bill but her complaints were ignored.

15. Plaintiff continued to pay both her primary and secondary bills in spite of the unauthorized billing because BELLSOUTH had a monopoly on phone service in the Baton Rouge area and because they ignored all attempts to correct their errors.

16. After Advanced Tel, Inc. d/b/a/ EATEL began providing local and long distance phone service to East Baton Rouge, Plaintiff discontinued her account with BELLSOUTH in August of 2003 and switched her account to EATEL and used incoming prepaid long distance AT&T calling cards to replace the incoming 800 line.

4

17. After closing her BELLSOUTH account, Plaintiff received a final statement of her BELLSOUTH account and in October of 2003, Plaintiff deposited a check from BELLSOUTH for $23.38 representing the credit balance remaining on her account. Plaintiff understood that her account with BELLSOUTH was then closed and she was no longer a BELLSOUTH customer.

*Defendants' wrongs*

18. BELLSOUTH continued to send Plaintiff bills with monthly increments until June of 2005, for approximately 21 months after she stopped receiving any services from BELLSOUTH and stopped being a BELLSOUTH customer.

19. BELLSOUTH did not turn off Plaintiff's account as ordered. Instead, without Plaintiff's authorization, BELLSOUTH took it upon themselves to change the line previously designated as an 800 line (but not used as such since June of 2003) into her "new" main line, Account # xxxxxxxxxxxxx3409, and then billed her as though she were still a residential customer. BELLSOUTH continued sending monthly bills with increments for this new, unauthorized line she neither used nor needed until 1/8/04 when the total, after three months, reached $101.00.

20. Concurrent with unauthorized act stated in number 18 above, BELLSOUTH also created and billed Plaintiff for a "new" fictitious "Z" 800 line, Account # xxxZxxxxxxxxx0462, also without authorization. BELLSOUTH continued sending monthly bills with monthly increments on this "fictitious" account until 6/1/05 when the total reached $81.00.

21. Plaintiff sent copies of the unauthorized BELLSOUTH bills to BELLSOUTH with notes written on them stating that the account was closed. She made phone calls to

persuade BELLSOUTH that she was not their customer and that the bills should stop. BELLSOUTH ignored all communications.

22. BELLSOUTH began assigning the unauthorized bills to bill collectors in February of 2004.

23. Finally, on July 9, 2005 after 21 months of ever-increasing bills on the "Z" account, Plaintiff's husband spoke to the one BELLSOUTH representative who understood the problem, admitted the billing was a mistake, and said he would, "take care of it."

24. After July 9, 2005, BELLSOUTH stopped sending their own bills but continued collection efforts via bill collectors.

25. Following is a list of the five bill collectors BELLSOUTH retained to harass, intimidate, humiliate, and bully plaintiff to coerce Plaintiff to pay amounts she did not owe along with respective account numbers, and amounts:

|                    | Interval            | Account #       | Amount   |
|--------------------|---------------------|-----------------|----------|
| Collectech Systems | 2/27/04 to 4/2/04   | xxxxxxxx4078    | $101.54  |
| ALPAT Co., Inc.    | 4/21/04 to 11/28/05 | xxx3121         | $ 81.00  |
| GC Services        | 7/15/05 to 8/15/05  | xxxZxxxxx0078   | $ 80.65  |
| FRANKLIN           | 4/26/05 to 4/20/06  | xxxxx3230       | $101.00  |
|                    | 3/22/06 to 4/20/06  | xxxxxx1928      | $ 81.00  |
| CBCS               | 4/22/06 to 11/24/06 | xxxx4163        | $101.00  |

26. Plaintiff was denied credit May 20, 2005, November 4, 2005, and on April 13, 2006. Plaintiff requested credit reports from the named major credit reporting agencies each time she was denied credit or notified that her interest rate was being increased due to "adverse notations" in her credit file.

27. Plaintiff requested and received the following copies of her credit reports. Also noted are the "adverse notations" regarding the BELLSOUTH "collection" accounts.

|  | Date Report(s) Prepared | Collector(s)/ Acct. # (s) | Date delinquent/ Dispute noted? | Amount |
|---|---|---|---|---|
| EQUIFAX | 1/19/06 | FRANKLIN xxxxxx3230 | 12/2003 / Dispute not noted | $101 |
|  |  | ALPAT xxx3121 | 6/2005 / Dispute not noted | $81 |
|  | 2/26/06 | After investigation, deleted Acct # xxxxxx3230 Still reporting: ALPAT 6/2005 Dispute noted |  | $81 |
|  | 5/1/06 | No collections reported |  |  |
|  | 9/16/06 | FRANKLIN xxxxxx1928 | 5/05 Dispute not noted | $80 |
|  |  | CBCS xxxx4163 | 1/04 Dispute noted | $101 |
| EXPERIAN | 7/25/05 | FRANKLIN xxxxxx3230 | Date not reported/ Dispute not noted | $101 |
|  | 9/6/06 | CBCS xxxx4163 | Date not reported/ Dispute noted | $101 |
|  |  | FRANKLIN xxxxxx1928 | Date not reported/ Dispute not noted | $80 |
| TRANSUNION | 2/6/07 | CBC NATIONAL xxxx4163 | Date not reported/ Dispute noted | $101 |
|  | 7/4/07 | CBC NATIONAL xxxx4163 | Date not reported/ Dispute noted | $101 |

28. In each of the eight credit reports Plaintiff received, the only negative or derogatory information in each were BELLSOUTH collection agency collections described in Number 25 and Number 27 above.

7

29. Plaintiff disputed the two collections by ALPAT (xxxx3121) and FRANKLIN (xxxxxx3230) and EQUIFAX removed the false derogatory information as reflected on the May 1, 2006 EQUIFAX report.

30. After May of 2006, rather than admitting its errors, BELLSOUTH maliciously and intentionally moved each disputed account to a different collector with different account numbers, knowing the derogatory information would thereby be reincarnated with a new start date on Plaintiff's credit report.

31. BELLSOUTH transferred the disputed $101 FRANKLIN account (#xxxxxx3230) to CBCS or CBC National with a changed account number of xxxx4163. This fictitious account continues to damage Plaintiff because it is still reported as a derogatory item on Plaintiff's credit report, with a recent date.[2]

32. BELLSOUTH transferred the disputed $81 ALPAT account (#xxx3121) to FRANKLIN with a changed account number, # xxxxxx1928.

33. As a result of BELLSOUTH's reassignments of these two bogus debts to new collection agencies these two bogus debts were reincarnated on the September 16, 2006 EQUIFAX report under different account numbers and with a later, and thus more damaging, assignment date.

34. BELLSOUTH has a continuing duty pursuant to 15 U.S.C.A. §1681s-2 (a) (1) (B) to not knowingly report erroneous information either directly or indirectly through its agents.

---

[2] In August of 2007, Plaintiff inquired about refinancing her home. The loan company indicated that TRANSUNION reported her TransUnion Empiraca (FICO) score was adversely affected by "**recent** derogatory public record or collection filed" and EQUIFAX reported her EquifaxBeacon5.0 (FICO) score was adversely affected because "the length of time since derogatory public record or collection is too short."

8

35. BELLSOUTH intentionally assigned and reassigned these two bogus debts to collection agencies to harass, intimidate, humiliate, and coerce Plaintiff into paying debts she did not and does not owe.

36. Pursuant to 15 U.S.C.A. § 1681c(c)(1) and Louisiana R.S. 51:1405 A, BELLSOUTH as a creditor has a duty to report the beginning of the alleged delinquency to any bill collectors they retain so that, if reported to the credit bureau as a delinquency, it does not violate the requirements of 15 U.S.C.A. § 1681c(4) which limits reporting of consumer's delinquency to seven years after a defined delinquency date.

37. Since Plaintiff's last payment to BELLSOUTH was in August of 2003 when she closed her account, the date of delinquency BELLSOUTH was obligated to transmit to the bill collectors and the date the bill collectors should have reported to credit bureaus (if the debts were indeed legitimate), pursuant to 15 U.S.C.A. § 1681c(c)(1), should have been on or before December of 2003.

38. BELLSOUTH in concert with its agent bill collectors did not accurately report the alleged delinquency date of the account(s) as being on or before December of 2003, in violation of 15 U.S.C.A. §1692e(2)(A), to the detriment of Plaintiff.

(a) Plaintiff owes BELLSOUTH no debt and BELLSOUTH knows she owes no debt. BELLSOUTH violated its duty pursuant to 15 U.S.C.A. §1681s-2 (a) (1) (B) to not knowingly report erroneous information. Further, BELLSOUTH placed xxxZxxxxxxxxx0462 for collection even after a BELLSOUTH representative acknowledged this was a completely fictional account with no basis. Since there was no legitimate debt and BELLSOUTH intentionally reported Plaintiff to a collection agency

9

as having a "bad debt," BELLSOUTH clearly violated both federal statute and Louisiana's Unfair Trade Practices Act.

(b) BELLSOUTH "refreshes" a valid or invalid collection account to the detriment of the consumer by turning it over to another collection agency with a later date and a new number, which is reported by the credit bureau as a new collection. This violates Louisiana's Unfair Trade Practices Act since BELLSOUTH acted to thwart congressional intent detailed in 15 U.S.C.A. § 1681c (a)(4) and (6) and 15 U.S.C.A. § 1681c (c)(1) to prohibit credit reporting agencies from reporting consumer debts through only seven years after a **defined** "date certain" delinquency date. This abusive pattern by BELLSOUTH of using a floating date rather than a "date certain" as congress intended is unfair to the consumer as well as a violation of federal law.

39. On February 1, 2006, Plaintiff sent FRANKLIN a letter disputing the debt(s) and requesting validation of the alleged debt as debt collectors are required to provide under 15 U.S.C.A. §1692g(b).

40. FRANKLIN has not yet responded to the request for proof required by 15 U.S.C.A. §1692g(b). After receipt of the dispute letter with demand for validation, FRANKLIN sent two additional collection notices, in violation of 15 U.S.C.A. §1692g(b). Franklin has a duty under 15 U.S.C.A. §1681s-2 (a) (1) (B) to report accurate information to the credit bureaus. They had a duty to inform the credit bureaus that Plaintiff disputed the validity of the BELLSOUTH collections. FRANKLIN violated this duty by not flagging the entry on Plaintiff's credit report as being disputed.

41. On May 1, 2006, Plaintiff sent CBCS a letter disputing the debt(s) and requesting validation of the alleged debt as debt collectors are required to provide under 15 U.S.C.A. §1692g(b).

42. CBCS did not send Plaintiff validation of the alleged debt. Instead, Plaintiff received on June 6, 2006 a stack of the same invalid monthly invoices Plaintiff previously received monthly from BELLSOUTH. Such "invoices" do not constitute validation of debt, though in this case, they do evidence an ongoing "invoice scam."

43. CBCS reported two different delinquency dates to credit bureaus for the same account in violation of 15 U.S.C.A. § 1681c(c) (1), to Plaintiff's detriment.

44. On July 5, 2007, Plaintiff disputed the CBCS collection account on her TRANSUNION credit report because the original account had already been paid.

45. On Sunday July 8, 2007 at 5.06 AM TRANSUNION reported via email that their investigation was complete and that they had verified the validity of the collection.

46. TRANSUNION as a credit reporting agency has a duty under 15 §1681 (b) to use reasonable procedures to ensure the accuracy of credit information.

47. TRANSUNION violated its duty to use reasonable procedures to ensure accuracy when they hastily concluded their "investigation" and concluded the CBC National collection account was accurate both as to validity and to date.

48. EQUIFAX violated its duty to use reasonable procedures to ensure accuracy when, after removing the erroneous accounts in the May 1, 2006 credit report following an "investigation," they returned the same erroneous collection information to Plaintiff's credit report after BELLSOUTH funneled these accounts to different bill collectors with changed numbers and changed dates placed for collection. EQUIFAX has a duty to

maintain procedures to ensure that creditors cannot reincarnate invalid accounts after they were investigated and removed. EQUIFAX violated this duty.[3]

49. EQUIFAX has a duty under 15 § 1681c (f) to report that a consumer disputes an alleged debt. EQUIFAX violated this duty by not noting that the FRANKLIN account xxxxxx1928 (which was the same alleged BELLSOUTH debt previously reported by ALPAT), was disputed.

50. Plaintiff does not owe BELLSOUTH any debt.

*Injuries*

51. Plaintiff was denied credit May 20, 2005, November 4, 2005, and on April 13, 2006.

52. Plaintiff's interest rate on her American Express account increased from 6% to 30.08 % even though her account was never late. In response to her inquiry and complaint, American Express informed her on July 15, 2005 that her interest rate was increased based on information in her credit report provided by EQUIFAX.

53. Plaintiff was humiliated when she was denied credit. Plaintiff was denied a parent loan for her son's college education which put her son at risk for not being able to further his education. Due to these derogatory entries in her file, Plaintiff has delayed applying for a fixed rate on her home loan because the collections remain on her credit report. Further, because the false collections returned to her credit report even after they were removed, her emotional distress has prevented her from making other needed financial decisions.

---

[3] In this case, Equifax's procedure which allows bill collectors to report their own account numbers rather than the original creditor's account number harms the consumer by allowing the same account that had been removed because it was invalid to be reincarnated as a "new" collection. Equifax could easily solve this problem by requiring collection agencies to report the same account number reported by the original creditor.

54. Plaintiff's interest rates have increased due to Defendants' violations of the aforementioned statutes, causing actual damages in the amount of $950.58.

*Prayer*

WHEREFORE, Plaintiff demands judgment against defendants as follows:

1. Actual damages in the sum of at least $950.58, together with interest.

2. Additional damages in the sum of $1000.00 from FRANKLIN as authorized under 15 U.S.C.A. §1692k (a)(2)A).

3. Additional damages in the sum of $1000.00 from CBCS as authorized under 15 U.S.C.A. §1692k (a)(2)A).

4. Additional damages in the sum of $1000.00 from FRANKLIN as authorized under 15 U.S.C.A. §1681n (a)(1)(A).

5. Additional damages in the sum of $1000.00 from CBCS as authorized under 15 U.S.C.A. §1681n (a)(1)(A).

6. Additional punitive damages in the sum of $10,000.00 from FRANKLIN as authorized under 15 U.S.C.A. §1681n (a)(1)(B)(2).

7. Additional punitive damages in the sum of $10,000.00 from CBCS as authorized under 15 U.S.C.A. §1681n (a)(1)(B)(2).

8. Additional damages of $100,000 from BELLSOUTH for violating the Louisiana Unfair Trade Practices Act in a malicious pattern akin to racketeering designed to inflict emotional distress and to extract unearned tribute.

9. Punitive damages of $100,000 from TRANSUNION authorized by 15 U.S.C.A. §1681n (a)(2) for not making a reasonable investigation as required by 15 U.S.C.A. §1681(b).

10. Punitive damages of $100,000 from EQUIFAX authorized by 15 U.S.C.A. §1681n (a)(2) for not making a reasonable investigation as required by 15 U.S.C.A. §1681(b).

11. Court costs.

12. Attorney fees.

13. Such other and further relief as this court may deem just.

14. Plaintiff demands a jury trial.

RESPECTFULLY SUBMITTED,

*Emily Wagner*
Emily Wagner, Pro se
872 Aster Street
Baton Rouge, LA  70802
(225) 389-9796
emilywagner@cox.net

Filed
Baton Rouge, Louisiana, this 21th day of August, 2007.

*Emily Wagner*
Emily Wagner, Pro se
872 Aster Street
Baton Rouge, LA  70802